# CITY COUNCIL OF MONTGOMERY *vs.* GILMER & TAYLOR.

[ACTION AGAINST MUNICIPAL CORPORATION FOR NEGLIGENCE.]

1. *Liability of municipal corporation for negligent construction of sewers.*—In the construction of sewers, a municipal corporation acts ministerially, and is responsible for damages caused by the careless and negligent manner in which that duty is discharged.

2. *Sufficiency of complaint in averment of facts instead of legal conclusion.*—In declaring against a municipal corporation, for damages caused by its neglect of duty in repairing streets and constructing sewers, an allegation that the defendant " wrongfully" refused to repair the streets, and " wrongfully" suffered large quantities of water to accumulate, &c., is the averment of a legal conclusion, and, consequently, is insufficient.

3. *Liability of municipal corporation for damage caused by flow of rain-water.* Where a municipal corporation is charged by its charter with the duty of keeping its streets in repair, an action lies against it for damages caused by its neglect of that duty ; but it is not, *prima facie*, responsible for damages caused by its failure or omission to prevent the flow of rain-water from the streets upon the adjacent lots, inasmuch as the legal duty of adopting a judicious system of drainage is legislative in its character.

4. *Relevancy of evidence in such action.*—In an action against a municipal corporation for damages caused by its neglect of duty in repairing streets and constructing sewers, it is competent for the plaintiff to prove notice to it of the condition of the street, and its failure or refusal to repair ; but evidence showing the motives which influenced the individual members of the corporation in refusing to support a proposition to repair, or that they were influenced by malice towards the plaintiffs, is irrelevant and inadmissible.

5. *Same.*—The fact that the corporation was informed, at a meeting of its council, through the report of one of its committees, that some slight repairs had been made upon a ravine in the street, is admissible evidence for the plaintiff, as tending to show a recognition of the street by the corporation, as well as notice to it of the character of the repairs.

6. *Opinion of witness as expert.*—A practical brick-mason, who had aided in the construction of plaintiff's wall, may be asked his opinion as an expert, whether the quantity of rain which fell on plaintiff's premises within the wall was sufficient to wash it down.

7. *When exception to charge of court must be reserved.*—An exception to a charge given by the court to the jury, must be taken before the jury leave the bar, and comes too late after that time.

8. *Conclusiveness of judicial decisions.*—An opinion of the supreme court, whether right or wrong, is the law of the case in which it is pronounced, and is not open to revision on a second appeal ; consequently, if that opinion asserts that, upon all the evidence set out in the bill of exceptions, the court below might have instructed the jury that the plaintiff was not entitled to recover, it is conclusive against the plaintiff's right of recovery on every aspect of the case which that evidence tended to establish, whether presented by the pleadings or by the instructions to the jury.

City Council of Montgomery v. Gilmer & Taylor.

APPEAL from the Circuit Court of Lowndes.
Tried before the Hon. JOHN GILL SHORTER.

THIS action was brought by the appellees, in October, 1851, "to recover damages for the defendant's negligence and carelessness in permitting the rain-water to run upon plaintiffs' lots, Nos. 1, 2, 9 and 10 in square No. 2, known as the Bibb & Nickels warehouse, from —— street in the city of Montgomery, and thereby washing and undermining plaintiffs' said lots, and injuring the same." The case was before this court at its January term, 1855, when the judgment of the circuit court was reversed, and the cause remanded.—See 26 Ala. 665. After the remandment of the cause, the venue was changed, on the application of the plaintiffs, from Montgomery to Lowndes county, where a second trial was had at the spring term, 1857.

The declaration contained five counts, which were, in substance, as follows :

1. That the defendant, contriving and intending to injure plaintiffs in the use and possession of their lots, and to render the same incommodious, unfit for occupation, and of little or no value, "wrongfully and unjustly erected and built, and caused to be erected and built, a certain sewer or gutter, to be used in conducting water through and from certain streets in the city of Montgomery, which said sewer was erected and built near to plaintiffs' said lots and premises, in so careless, negligent and improper a manner, that by reason thereof, afterwards, to-wit," &c., "divers large quantities of water ran and flowed from said sewer, down, to, upon, against and into plaintiffs' said lots and premises, and thereby greatly injured and damaged said lots and premises, and tore up and washed away a large part of the soil thereof; and that, by reason of the premises, plaintiffs' said lots and premises became and were incommodious and unfit for use and occupation."

2. That whereas the defendant, at the time of the grievances complained of, "was in possession of, and had authority and control of, certain sewers, or water conductors, in the streets of Montgomery, near to plaintiffs'

said lots and premises, and, by reason thereof, ought to have hindered and prevented the water, from time to time being in said sewers, from running and proceeding therefrom, into, upon and against the plaintiffs' said lots and premises;" nevertheless, said defendant, knowing the premises, but contriving and intending to injure plaintiffs, &c., "wrongfully and unjustly suffered and permitted large quantities of rain-water to penetrate, issue and flow, from and out of said sewers, upon, against and into plaintiffs' said lots, and thereby greatly damaged and injured said lots, and tore up, undermined and washed away a large quantity of the soil," &c.

3. That whereas the defendant, at the time of the commission of the grievances complained of, "was in duty bound to keep the streets in said city of Montgomery in good repair, and to protect the plaintiffs' property in said town from injury and damage arising from a flow of rain-water through said streets, if the same could be done by reasonable care and diligence; and whereas Moulton street in said city was one of the streets which defendant was thus bound to keep in repair, so that rain-water should not flow therefrom upon plaintiffs' property, and was near to and adjoining plaintiffs' said premises; and, by reason of the premises, said defendant ought, before and at the time of the commission of the grievances hereinafter mentioned, by reasonable care and diligence, to have hindered and prevented rain-water, from time to time falling and running into said street, from running and proceeding therefrom, into, upon and against plaintiffs' said lots and premises, in such manner as to injure and damage said lots and premises;" nevertheless, said defendant, disregarding its duty in that behalf, and contriving and intending to injure plaintiff, &c., "wrongfully and unjustly suffered and permitted said Moulton street to be and remain out of repair, and refused to repair the same, and wrongfully and unjustly suffered and permitted large quantities of rain-water to run through said street, so being out of repair as aforesaid, to, in, against and upon plaintiffs' said lots and premises, and thereby greatly injured and damaged said lots and premises, and thereby

caused a large brick wall of plaintiffs, then and there being on plaintiffs' said lots and premises, to be undermined, to fall and to be washed away, and thereby also caused a large quantity of the earth and soil in said lots to be undermined, torn up and washed away," &c., "when said damage and injury could have been prevented by reasonable care and diligence," &c.; by means whereof, plaintiffs were greatly injured in the use and occupation of their said lots, and were forced to lay out and expend large sums of money in the reconstruction of the wall, &c.

4. That whereas the defendant ought of right to have repaired and kept in repair the streets surrounding the square on which plaintiffs' lots were situated, so as to prevent the washing of said streets, and the tearing up and washing away of the soil by the running and flowing of rain-water; nevertheless, knowing the premises, and intending to injure plaintiffs, &c., "said defendant wrongfully and unjustly permitted said streets to be and remain out of repair for a long time, to-wit," &c., and to be greatly injured and washed away by the rain-water flowing and running through and upon them, whereby a large quantity of the earth and soil was washed away from the plaintiffs' lots; that in consequence of the injury thus done to their lots, (of which they gave notice to the defendant, who still failed and refused to make the necessary repairs on said streets,) and to protect their lots from such injury and damage in future, plaintiffs were compelled, at great expense, to build a brick wall on said lots for their protection and security against the injury and damage which would otherwise result from the running and flowing of the rain-water from the streets; that after the erection of said wall, the defendant still neglecting and refusing to repair the said streets, and permitting the rain-water to continue to flow against and upon said lots and wall, thereby the rain-water undermined and washed away said wall, and tore up and washed away large quantities of earth, &c., whereby plaintiffs were compelled to erect other walls, &c.

5. That whereas, from time immemorial, large quantities of rain-water had been accustomed to flow into the

Alabama river, running off on the eastern and northern sides of the square on which plaintiffs' lots were situated, and not flowing through or upon said square; the defendant, contriving and intending to injure plaintiffs, &c., "wrongfully and unjustly erected and built, and caused to be erected and built, divers dams and banks, of great length," &c., "and dug and cut down divers ditches," &c., and continued to keep them open for a long time, and, "by means thereof, diverted and turned large quantities of rain-water, which had been accustomed from time immemorial to flow off as aforesaid, and which otherwise would have continued to flow off into the Alabama river, passing to the east and north of said square, and which said defendant thereby hindered and prevented from flowing off as it had been accustomed to do, and conducted the same, by means of said dams and ditches, into and along said Moulton street, over the bank of said river, at or near a point where said Moulton and Water streets intersected, and where said Moulton street strikes into the stream of the Alabama river, without using the proper and necessary care, skill and means to prevent said rain-water, so diverted as aforesaid, from wearing, tearing up and washing away the said river-bank, and the soil and earth thereof, at the points where said water was conducted into the river," &c.; that thereby, "through the carelessness, negligence and want of skill of the defendant," the said river-bank, with the soil and earth of said street, was washed away by the said rain-water; that this washing away of the soil extended up to and upon plaintiffs' said lots, and a large space of ground was thereby washed out and carried away; whereby plaintiffs' said lots were greatly injured and damaged, and they were compelled to expend large sums of money in filling up said excavation, and in erecting walls to protect their lots from further damage, &c.

The defendant demurred to the entire declaration, and to each count separately; and, the demurrer being overruled, pleaded the general issue, "in short by consent, with leave to give in evidence any special matter in bar, and like leave to the plaintiffs to reply."

The evidence adduced on the trial, respecting the situation of the plaintiffs' lots, the condition of the adjacent street, the undermining of the plaintiffs' wall, &c., was substantially as follows : The plaintiffs' lots, which they purchased on the 4th January, 1850, were bounded on the south by Moulton street, and on the west by Water street, and lay within thirty yards of the Alabama river. Moulton street was laid down on the city map as extending to the Alabama river; but the lower portion of it, extending up to or near the plaintiffs' lots, had not been used or worked as a street, (at least as far back as 1832,) on account of a ravine which had formed in it, and which constituted the natural outlet for the rain-water which fell upon that portion of the city covering an area of about sixty-five acres. This ravine gradually increased in size, and the increase became more rapid as that portion of the city was improved. Prior to 1850, it had encroached considerably on said lots bought by the plaintiffs, and extended back from the river about one hundred and forty yards; and at one point, on account of the projection of a bluff on the south side, the whole ravine was there thrown on said lots. In 1842, the corporation opened several new streets in that portion of the city, and so ditched them that the water flowed from them down into Moulton street, and thence into said ravine. It was shown that, although these new streets, thus ditched, changed the direction of the water, they were within the natural basin which had previously emptied into the ravine, and did not divert into it any water which did not naturally flow into it. One witness testified, however, that the effect of ditching the streets was to increase the quantity and rapidity of the flow of water. The flow of water into said ravine was further increased by the cutting down of the timber and the clearing up of the lots in that portion of the city which constituted the natural basin of the ravine.

In 1851, said ravine was several hundred feet in length, from thirty to fifty feet in breadth, and about fifteen feet deep; and extended partly on Moulton street, and partly on plaintiffs' lots Nos. 9 and 10. In the summer of 1851,

9

the plaintiffs informed one of the aldermen of the city that they desired to improve their lots, and to erect a warehouse on them, and desired the corporation to fill up the ravine; and this information was communicated by the alderman to the council of the corporation, at one of their regular meetings, and the subject was then discussed by them. The plaintiffs asked a witness who was a member of the council, and who was present at said meeting, " if some of the members did not express themselves willing to repair the ravine if plaintiffs would give up certain wharf privileges claimed by them, of which they had enjoyed the uninterrupted possession for twenty years; and the witness answered, that two of the members did." The defendant objected to this question and answer, and reserved an exception to the overruling of the objection. The plaintiffs also asked another witness, who was the mayor of the city in 1851, and as such a member of the council, " if he would not have been willing to repair said ravine if plaintiffs would have given up said wharf privileges; and the witness answered, that he would." The defendant objected to both this question and answer, and excepted to the overruling of the objection. It was further shown by the plaintiffs, " that at said meeting of the city council, one of the members expressed personal hostility to Gilmer, one of the plaintiffs—said that he was a shrewd, sharp man, always trying to make money out of the city; that he believed him to be a rascal, and would see him and his property in hell before he would vote a dollar to improve said ravine." To this evidence no objection seems to have been made, and no exception reserved.

At the meeting of the council above referred to, which was held on the 23d June, 1851, a committee was appointed to contract for the boxing and grading of said ravine; but said committee was discharged on the 12th August, having done nothing in the matter. In the meantime, that is, between the appointment and the discharge of said committee, the regular street committee, a standing committee, threw a large quantity of brushwood into the head of the ravine, and verbally reported their action to a

meeting of the council; but the record book kept by the council, in which its proceedings were entered, did not show any such report. The defendant objected to the admission of this evidence, and reserved an exception to the overruling of the objection.

Soon after said brushwood was thrown into the ravine, the plaintiffs commenced building a brick wall along the line of their lots. "Said wall was built about seventy feet on Water street, and about two hundred feet on Moulton street, in the bottom of said ravine. The bottom of that part of said ravine was sandy and gravelly, and partly of clay. As said wall was being built, plaintiffs graded down the earth from the lot on the inside of the wall, and threw it up against the wall, and made a side-walk on the outside of the wall, about six or eight feet wide, and about six feet high. Said wall was three feet wide at the bottom, and about eighteen inches wide at the top, and about twelve feet high at the lower end. It was built of good brick, and water-proof cement. In the erection of said wall, plaintiffs had partly cut away the point of earth which extended up to their lots, and built the wall and side-walk at that point so that not more than two feet intervened between the side-walk and the opposite side of the ravine. One of the aldermen testified, that he had a conversation with Gilmer about this point of earth, while said wall was being built, and advised him to cut it down; but that Gilmer refused to do it, saying that the council ought to do it, as it was on the street, and that it might affect his right to sue the city if he cut it down. Said witness further testified, that he never communicated this conversation to the city council, or any member of it; and that the city hands could have cut down the point in two hours. Said point was about three feet higher than the wall, and was perpendicular; and the soil at the base was composed of loose gravel, easily washed."

In August, 1851, before the completion of said wall, a heavy rain fell in Montgomery, which undermined the said bluff in the street, washed down a portion of the plaintiffs' wall, and carried away the earth which had

been placed on both sides of it. "The evidence tended to show, that the damage was caused by the bluff being undermined, and either knocking down said wall, or damming up the ravine, and forcing the water over the wall. There was evidence, also, tending to show that the water which fell on a portion of plaintiffs' lots, and on one side of their warehouse, ran down on the inside of said wall, and that there was no way provided for carrying it off." Two witnesses testified, on the part of the defendant, that the erection of a brick wall in such a place was an imprudent act, as it would probably be undermined and washed down. The plaintiffs asked a practical brick-mason, who had aided in the construction of their wall, and who was examined as a witness in the cause, "whether, in his opinion, the rain which fell within the wall was sufficient to wash it down; and the witness answered, that it was not." The defendant objected to the admission of this question and answer, and reserved an exception to the overruling of the objection.

In the latter part of the year 1851, after plaintiffs' wall had been thus washed down, the defendant let out a contract for the erection of a brick sewer under said street, and the grading of the same; which contract was taken by one of the plaintiffs, as the lowest bidder, at the price of $3,700. After the completion of that work, the place which had been occupied by the ravine was used as a street, and no further damage was done by the flow of the water. There was evidence, also, tending to show "that it would have been impracticable to repair a portion of said ravine without the joint co-operation of the owners of said lots Nos. 9 and 10."

The above is the substance of all the evidence adduced on the trial, as the same is set out in the bill of exceptions. On this evidence, the court, of its own motion, gave two affirmative charges to the jury; "to which charges the defendant excepted, after the jury had retired, but before they brought in their verdict." The decision of this court on the sufficiency of this exception renders it unnecessary to state these charges.

The court also gave to the jury, at the request of the plaintiffs, the following written charges:

" 1. If the jury believe from the evidence that the city council of Montgomery has diverted a considerable quantity of water from its natural course, so as to cause its flow into and upon the plaintiffs' property described in the declaration, so as to injure their said property, then it was the defendant's duty to take proper precautions to prevent the water so conducted from doing any injury to the plaintiffs; and if the jury are satisfied that proper precautions were not taken by the defendant, the plaintiffs are entitled to recover for any injury so sustained from such neglect.

" 2. If the jury believe from the evidence that about sixty-five acres of land in the city of Montgomery were naturally drained through a ravine standing partly on the plaintiffs' property, and the defendant, by digging ditches and laying down boxes, so altered the flow of the water as to greatly increase the quantity which found its way to the plaintiffs' property, and to accelerate its flow, so as to deliver a much larger quantity of water in the same space of time, near to and on the plaintiffs' property; and that the damage to plaintiffs' property was thereby greatly increased,—then it was defendant's duty to have taken proper precautions to prevent any such increased injury to plaintiffs' property; and if the jury are satisfied by the evidence that proper precautions would have prevented such injury to plaintiff's property, and that plaintiffs' property has sustained damage by the increase of the quantity of water which found its way to their lots, and from the accelerated flow of the water, in consequence of the defendant's failure to take such precautions, then the plaintiffs are entitled to recover for the damages so sustained.

" 3. If the jury believe from the evidence that the plaintiffs owned lots Nos. 9 and 10, at the foot of Moulton street in the city of Montgomery, and gave notice to the defendant that they wished to improve said lots by building a wall along the line of their lots, and that they desired the defendant to protect their property by improving and

taking care of Moulton street; and that, after such notice, a reasonable time was allowed to have protected said lots before plaintiffs commenced their improvements; and that plaintiffs then erected a wall on the line of their lots on Moulton street; and that no sufficient passage for the water which flowed down Moulton street was left along the wall on Moulton street; and that a sufficient passage for the water would have been afforded by working for a few hours on Moulton street; and that this work could have been done by the city hands in two hours; and that they failed to do such work, and, by such failure, the plaintiffs' wall was washed down,—then the plaintiffs are entitled to recover the damage sustained by the washing down of their wall, if the city council recognized and assumed authority on Moulton street.

"4. If the jury believe from the evidence that the plaintiffs owned lots Nos. 9 and 10 in the city of Montgomery; and that said lots were bounded on one side by Moulton street; and that a ravine existed in Moulton street, along the side of said lots, and on the said lots, through which a large quantity of water was conducted to the river; and that the quantity of water so conducted through said ravine, was materially increased by the action of the city council, in diverting water into said ravine which was not naturally used to flow through it; and that the quantity of water so conducted through said ravine, was further materially increased, by facilitating its flow into said ravine, by the building and digging of ditches, gutters, boxes and sewers; and that the water so increased in quantity, by the means aforesaid, could have been safely conducted to the river, without injury to the plaintiffs, by boxing and grading said ravine at the foot of Moulton street, in said street; and that plaintiffs gave notice to defendant, that they wished to improve their lots by building a wall for a warehouse along the line of said lots on Moulton street, and requested defendant to protect said lots from the flow of water along said ravine; and that plaintiffs, after a reasonable time had elapsed since the notice to enable the defendant to take proper precaution to protect the wall, did build a wall along the line of

Moulton street, and built it in a skillful manner, with brick and hydraulic cement, so as to make it resist the action of the water as well as possible; and that the defendant failed and neglected to take such precautions, and, by means of such failure, the plaintiffs' wall was washed down, and the soil washed away from their lots,— then the plaintiffs are entitled to recover the amount of the damage sustained by the washing down of their wall, and by the washing away of the soil, if the jury further believe that the defendant recognized Moulton street along the line of said lots as a street.

"5. If the jury believe from the evidence that said street has been repaired since the damage, it is evidence which they may consider in determining whether it could not have been repaired before."

The defendant excepted to each of these charges, and then requested the following written charges:

"1. That if the jury believe from the evidence, that all the water which was diverted by the defendant into the ravine in controversy, was diverted about the year 1842; and that the plaintiffs did not become the owners of the property injured until 1850,—then the plaintiffs cannot recover for such original diversion.

"2. That the plaintiffs cannot recover in this case for the defendant's negligence in permitting the water to flow into said ravine.

"3. That if the jury believe from the evidence that it was impracticable for the defendant to repair said ravine, without the concurrence and co-operation of the plaintiffs in said work, and that the plaintiffs did not offer to co-operate with the defendant in said repairs before the damage sued for was done,—then the plaintiffs cannot recover on account of the defendant's failure to repair said ravine.

"4. That if the jury believe from the evidence that the plaintiffs built their wall partly across said ravine, and near to the opposite bank of it, and thereby caused the current to be forced against the opposite bank; and that the same was undermined, and washed down, and fell against said wall, and, in falling, knocked down the said wall,—then the plaintiffs could not recover."

The court gave the first charge, but with this qualification: "That the plaintiffs would be entitled to recover, if damage was sustained, if such diversion was negligently continued by the defendant after plaintiffs became the owners of said lots in 1850;" and refused all the others. The defendant reserved exceptions to the refusal of each one of these charges, and to the qualification added by the court to the first charge given.

The errors now assigned embrace all the rulings of the court below, adverse to the defendant, on the pleadings and evidence, and in the instructions to the jury.

BAINE & NESMITH, and WATTS, JUDGE & JACKSON, for the appellant, contended—

1. That the former opinion of the supreme court pronounced in this case, as reported in 26 Ala. 665, was conclusive of all the points now presented by the record, whether raised on the pleadings or in the instructions to the jury, except so far as the case might be affected by the two additional facts disclosed on the second trial—to-wit, that the ravine had been repaired at a heavy expense since the commencement of this suit, and that the defendant recognized the ravine as a part of Moulton street. As to the duty of the corporation to repair the ravine under the circumstances in proof, and its liability for the damage complained of, they cited the following cases: Smoot v. Mayor of Wetumpka, 24 Ala. 121; Wilson v. Mayor of New York, 1 Denio, 596; St. Louis v. Gurno, 12 Missouri, 414; People v. Adsit, 2 Hill, 619; People v. Commissioners, &c., 7 Wendell, 474; Barker v. Loomis, 6 Hill, 463.

2. That the court erred in the admission of evidence showing the motives which influenced the action of individual members of the city council, or the feelings entertained by them towards one of the plaintiffs.—Angell & Ames on Corporations, 249–521; 3 Phil. Ev. (Notes) part I, p. 393, and cases cited.

3. That the opinion of the brick-mason, as to the sufficiency of the water which fell within plaintiffs' wall to wash it down, was not competent evidence; because, 1st,

he was not an expert as to the matter on which he gave his opinion; and, 2dly, it was not competent to prove such a fact by opinion.—Hartford Ins. Co. v. Harmer, 2 Ohio St. R. 452.

ELMORE & YANCEY, *contra*, cited the following cases:

1. As to the duty of municipal corporations to repair streets, and their liability for damages caused by a neglect of that duty, as well as for the negligence of its officers and agents generally: Mayor v. Furze, 3 Hill, 612; Martin v. Mayor, 1 Hill, 545; Riddle v. Proprietors, &c., 7 Mass. 184; Mayor of Lynn v. Henley, 1 Bing. N. C. 373, (27 E. C. L. 366;) Stetson v. Faxon, 19 Pick. 147; Thayer v. City of Boston, 19 Pick. 511; Townsend v. Susquehanna Turnpike Co., 6 Johns. 90; Mears v. Commissioners of Wilmington, 9 Iredell, 73; Akron v. McComb, 18 Ohio, 229; Bailey v. Mayor, &c., 3 Hill, 538; Hay v. Cohoes Company, 3 Barbour, 42; Steele v. Western Land Nav. Co., 2 Johns. 283; Matthews v. Water-Works Company, 3 Camp. 403; Rochester White Lead Co. v. City of Rochester, 3 Comstock, 463; Rhodes v. City of Cleveland, 10 Ohio, 159; 18 Ohio, 233; Cowper, 86; 1 Ad. & El. 526, (28 E. C. L. 40;) 4 Camp. 72; 5 La. 461; 2 Denio, 433.

2. As to the admissibility of evidence showing what took place at the meeting of the city council: Goodloe v. City of Cincinnati, 4 Ohio, 504; Rhodes v. City of Cincinnati, 10 Ohio, 160; McComb v. Akron, 15 Ohio, 474; S. C., 18 Ohio, 229.

3. That the brick-mason was competent to give his opinion as an expert: 1 Greenl. Ev. §§ 440, 576, 580, and cases cited.

WALKER, J.—The first count of the declaration alleges, that the corporation wrongfully and unjustly erected a sewer and gutter, for the purpose of conducting the water through and from certain streets; and that the erection was made in such a careless, negligent and improper manner, that by reason thereof large quantities of water flowed upon and damaged the plaintiffs' neighbor-

ing lots. Notwithstanding there is some conflict of authority upon the subject, we think the doctrine, that a municipal corporation, in the construction of sewers, acts ministerially, and is responsible for damages caused by the careless and negligent manner in which it discharges that duty, is consistent with reason, demanded by justice, and supported by a preponderance of authority. We therefore adopt it.—Rochester White Lead Co. v. City of Rochester, 3 Comstock, 463; Lloyd v. Mayor and Aldermen of New York, 1 Selden, 369; Delmonico v. Mayor, &c., of New York, 1 Sandf. Sup. Ct. R. 222; Mears v. Commissioners of Wilmington, 9 Iredell, 73; Mayor of New York v. Furze, 3 Hill, 612; Smoot v. Mayor of Wetumpka, 24 Ala. 112; Dargan v. Mayor and Aldermen of Mobile, 31 Ala. 469, where several cases bearing upon the question are collated. It necessarily results from the adoption by us of this doctrine, that we must approve the action of the court below in overruling the demurrer to the first count.

[2.] The court erred in overruling the demurrer to the second count of the declaration. The object of that count was the recovery of damages for the defendant's *wrongful* suffering and permitting the water to flow from the sewers on the street upon the plaintiffs' lots. If the defendant did *wrongfully* permit the water to flow from its sewers upon the plaintiffs' lots, and thus cause damage, the plaintiff has a right of action. But, whether the allowing of the water to flow from the sewers upon the land of plaintiffs was wrongful, is a question of law. The facts being ascertained, it is a question of law whether it was the duty of the corporation to prevent the flow of the water upon the plaintiffs' lots, or whether it committed a wrong upon the plaintiffs in permitting the water so to flow. It was not sufficient for the plaintiffs to aver the conclusion of law. They should have set forth the facts from which that conclusion is deducible.—McKeagg v. Collehan, 13 Ala. 828; Clay v. Dennis, 3 Ala. 375; Giles v. Williams, 3 Ala. 316; Savage & Darrington v. Walshe & Emanuel, 26 Ala. 619; Nelson v. Iverson, 24 Ala. 9.

City Council of Montgomery v. Gilmer & Taylor.

[3.] The third count is obnoxious to a similar objection with the second. The averment of this count is, that the defendant wrongfully and unjustly permitted the adjacent street to remain out of repair, and wrongfully and unjustly refused to repair the same, and wrongfully and unjustly suffered a large quantity of rain-water to run down the street which was out of repair, to, in, against and upon the plaintiffs' lots, and thereby caused the plaintiffs' brick wall to be undermined and to fall, and other specified damage to be done. This count does not attribute the damage done to the neglected condition of the street, either directly or indirectly. It does not show that the neglected condition of the street was the immediate cause of the damage, or the cause of the flow of rain down the street, to, in, against and upon the plaintiffs' lot. It was a duty of the corporation, devolved upon it by its charter, to keep the street in repair, and the third count shows a breach of that duty; but it fails to show a right of action in the plaintiffs, as a consequence of that breach of duty, because it does not appear from the declaration that damage resulted to the plaintiffs from that breach of duty. If it were shown to have been a legal duty of the corporation to have prevented the flow of the rain-water down the street, to, in, against and upon the plaintiffs' lots, then the plaintiffs might recover the damages caused by such flow of water. We attach no importance to the qualification of suffering the water to flow as it did, by the words "wrongfully and unjustly," because whether the failure to prevent such flow of water was wrongful and unjust is a question of law. It is not, *prima facie*, the legal duty of a municipal corporation to prevent the flow of rain-water from the streets upon the adjacent lands, for the omission of which an action may be maintained. It is unquestionably a duty, which it owes to its community, to adopt a judicious system of drainage, whereby the water falling upon the city may be conducted with as little detriment as possible. But this, like the duties of making and enforcing proper quarantine and sanitary regulations, is a legislative duty, embraced in the general obligation to provide for the general welfare of its people,

and must be left, like other governmental powers, to the discretion of the corporate authorities.—Smoot v. Mayor of Wetumpka, 24 Ala. 112.

If there are any circumstances in this case which render the corporation responsible for the flow of the water, and the damage done thereby, they are not shown in the count under consideration, and the demurrer should have been sustained to it.

[4.] The plaintiffs were permitted to prove that, at a regular meeting of the city council, some of the members expressed themselves as willing to repair the ravine, if the plaintiffs would give up certain wharf privileges, which they were claiming. This evidence was illegal. The motives which may have induced any member of the corporation to withhold his support from a proposition to make the repairs upon the street, was a matter wholly immaterial and irrelevant. The plaintiffs had no right to recover vindictive damages. No question of vindictive damages was involved in the case. It was competent to prove that the corporation refused, or failed, when informed of the condition of the street, to repair it. Such evidence tended to establish the fact of negligence. But the plaintiffs' right of action in no wise depended upon the motive of the refusal to support a proposition to repair on the part of any one of its members. For the same reason, the court erred in admitting evidence of the remarks of one of the aldermen indicating the existence of unkind feelings on his part towards one of the plaintiffs. If it had been proved that every member of the council was actuated by malice, it would have been entitled to no influence whatever upon this case. The corporation can not, upon any principle known to us, be responsible for the malice of its officers towards the plaintiffs.—Wright v. Wilcox, 19 Wendell, 343. If the Ohio cases, cited by the counsel for the appellee, assert the proposition, that a corporation is liable for the malicious motives which may have induced the members of its legislative assembly to decline the adoption of the resolutions or ordinances necessary to the performance of a duty imposed upon it by law, we are not willing to follow them. The court

also erred in admitting the witness who was mayor in 1851 to prove that he would have been willing to have repaired the ravine, if plaintiffs would have given up the wharf privileges claimed by them.

[5.] It was permissible for the plaintiffs to show, that the corporation was, at a meeting of its council, informed through a report by one of its committees of the fact that some slight repairs were made upon the ravine in the street. The making of such a report to the council by the committee was a part of its proceedings, conducing to show a recognition of the street as one of the streets of the city; and, at all events, the evidence was admissible, for the purpose of showing that the corporation was informed of the character of the repair of the street, which the plaintiffs contended was totally insufficient.

[6.] The evidence conduced to show, that the wall of plaintiffs was built with a view to its capacity to resist the flow of water. The witness whose opinion was given as to the capacity of the wall to withstand the flow of water from the inside, was a practical brick-mason, and had been engaged in the construction. He was, therefore, cognizant of the facts, which affected the capacity of the wall to stand, when a stream of water flowed upon it. He was also acquainted with the premises, and knew the sources for the accumulation of a volume of water within the wall. A brick-mason, thus informed, certainly must be deemed to have more than ordinary skill in the determination of the question, whether the water flowing from the inside could wash down the wall. A brick-mason must be supposed to possess more skill in determining the strength of a brick wall than persons usually have, especially if he was employed in the construction of the wall. The authorities, we think, fully authorize the conclusion, that the opinion of the witness was admissible under the circumstances, as coming from an expert.—1 Greenleaf on Evidence, § 440; McCreary v. Turk, 29 Ala. 244; Porter v. Pequonnoc Man. Co., 17 Conn. 249.

[7.] The two charges given by the court of its own motion were not excepted to until after the jury retired. There are many authorities which hold, that an exception to the

charge of the court may be taken at any time before the jury return their verdict; but we adopt the rule that the exception must be taken before the jury leave the bar, because it is supported by respectable authorities, has been for a long time universally recognized in practice in this State, and seems to rest upon a good reason. The reason is, that the court may have, at the time of giving the charge, an opportunity "for reconsidering and explaining it more fully to the jury."—Phelps v. Mayor, 15 Howard (U. S.) R. 160; Leigh v. Hodges, 3 Scam. 15; Hill v. Ward, 2 Gilman, (Ill.) 285; Wilson v. Owens, 7 Howard, (Miss.) 126; Life and Fire Insurance Co. v. Mechanics' Fire Insurance Co., 7 Wend. 31. The two charges given by the court of its own motion, are, therefore, not before us for revision.

[8.] The first, second, and fourth charges given upon the plaintiffs' request, authorize a finding by the jury upon a state of facts, which the evidence set forth in the bill of exceptions contained in the record when this case was before in this court, conduced to prove. The tendency of the evidence found in the record of this cause when previously in this court, was to show that the corporation had diverted water from its accustomed and natural flow, and so conducted it as to throw it upon the plaintiffs' lots, making no provision for its outlet without detriment to the plaintiffs, who had thereby sustained damage. It would have involved a violation of principle, not now disputable, for the court to have assumed the reverse of those facts, and prohibited to the jury the inference of them, if there was the slightest tendency of the evidence to their establishment. This court, by its former decision in this case, authorized the application to the evidence then before it of a charge, that the jury, if crediting the testimony, should find for the defendant. We cannot affirm of that decision, that it was predicated upon an erroneous assumption of fact, for it was not the province of the court to pass upon the facts, but to leave them with all their tendencies to the arbitrament of the jury. The former decision must, therefore, be understood to assert, that no state of facts which the evidence con-

duced to show authorized a verdict for the plaintiffs. As the evidence did conduce to show the state of facts presented in the hypothesis of the first, second and fourth charges, that decision must be understood as denying the right of recovery upon those facts, and consequently as adjudicating against the correctness of such charges.

The decision on the former appeal cannot be regarded in the light of a mere *dictum*, but as a comprehensive adjudication, dispensing by virtue of its conclusive effect upon the case presented with the necessity of considering separately the questions arising upon the different aspects of the case. It is the law of this case, whether right or wrong, and we cannot now revise it.—Matthews, Finley & Co. v. Sands, 29 Ala. 136.

The first, second and fourth charges given upon the request of the plaintiffs, are inconsistent with the decision on the former appeal, and are, therefore, erroneous.

Upon the same principle, the demurrer to the 5th count should have been sustained. The averments of that count make out the same case substantially with the hypothesis presented in the first, second and fourth charges.

So, also, the evidence on the former appeal conduced to show the facts averred in the fourth count. Upon the facts set forth in the former bill of exceptions, it would have been manifestly improper for the court to have assumed the absence of evidence with such tendency, and thus have precluded the jury from passing on them. This (the fourth) count alleges, in substance, that Moulton street was out of repair; that it was permitted for a long time to remain out of repair; that in consequence of the streets so being and remaining out of repair, the rain-water continued to tear up, wash and carry away the soil, dirt and earth of the street, and enlarge the space thus made in length, width and depth, until finally a brick wall, erected on the plaintiffs' line for the protection of their lots from the rain-water, was thereby undermined and washed down, and other described damage done. The right of the plaintiff to recover upon those facts depends upon the question, whether the corporation is responsible to adjacent land proprietors for injuries result-

ing to their lands from the omission of the corporation to repair and keep in repair the street upon which such lands are situated.     There was certainly sufficient evidence before the court on the former trial to raise that question; and the decision, that upon the evidence the plaintiffs could not recover, necessarily involves an adjudication of that question in the negative.

The court also erred in giving the third charge requested by plaintiffs.    This charge, in effect, asserts the legal proposition, that the corporation, within a reasonable time after notification of the owner's design to build upon unimproved lots, is required to prevent any flow of water, which would be detrimental to the contemplated erection. Its sequence would be, that if there was an accustomed and natural flow of water from the street upon the unimproved lot of an adjacent proprietor, that it would be the duty of the corporation to prevent it, whenever it might be notified of the design to make an erection to which such flow would be prejudicial.    The imposition of that duty would require the performance, not only of such acts as would keep the streets in repair, but of such as would also improve the adjacent lots, and cure natural deficiencies in them.    The corporation would thus be made the obligated conservators and improvers of private property. The duty prescribed by the charter of keeping the streets in repair does not exact the performance of such acts as are necessary to protect adjacent lands from a natural flow of water, or to cure a natural fault of such lands.    It follows, that if the land proprietor makes an erection in a position to be injured by a natural and accustomed flow of the water, his damages are attributable to his own act, and not to a breach of duty by the corporation.

It may be contended, that it is a legal duty of the corporation to repair the street, *as a street ;* that if the corporation had discharged that duty, it would have diverted the water, and thus incidentally protected the plaintiffs' property, and that the plaintiffs may therefore recover. The third charge does not raise that question ; but, if it did, we should be bound to hold, as we have done in refer-

ence to the demurrer to the fourth count, that it was decided against the plaintiffs on the former appeal.

It is possible that the mind of the court was not directed, when the former appeal was tried, to all the points which are now pressed upon our attention, and that therefore the decision has really a wider scope than was intended. For that reason, we should not hesitate, in another case, where we would not be shackled by the rule which makes a decision the law of the case in which it is made, to re-examine the question involved in that decision. We forbear to do so now, because the chief-justice does not sit in this case, and whatever we might say would indicate the position of only a part of the court, and could be but an expression of our opinions upon questions not before us.

What we have said disposes of all the material points of the case, and will be sufficient to guide the court on a future trial.

The judgment of the court below is reversed, and the cause remanded.

Rice, C. J., not sitting.

