## WEAVER *vs.* ALA. COAL MINING CO.

[ACTION AGAINST OWNERS OF STEAMBOAT FOR NEGLIGENCE.]

1. *Relevancy of evidence explaining implied admission.*—In an action against the owners of a steamboat, to recover damages for injuries to plaintiff's cotton, caused by a collision between the steamboat and a flat-boat on which the cotton was shipped, it having been shown that, after the collision, the cotton was taken on board of the steamboat, and carried to its destination ; that the plaintiff's factor there paid the boat a large sum of money under a claim of salvage, and that the plaintiff reimbursed his factor the sum so paid,—it is permissible for the plaintiff to show, in explanation of this implied admission, that the money was not paid by his factor in recognition of the right to salvage, but " under protest, to get possession of the cotton," and under an agreement that " the claim to salvage, damages, &c., was to be left to legal decision."

2. *Objection to responsive answer.*—An answer which is responsive to an interrogatory, and which is relevant evidence, cannot be excluded or suppressed on the motion of the party by whom the interrogatory was propounded.

3. *Competency of agent as witness for principal.*—In an action against the owners of a steamboat, to recover damages for injuries caused by a collision between their boat and a flat-boat, the captain, mate, and engineer of the steamboat, who had charge of her at the time of the collision, may be made competent witnesses for the defendants by being released.

4. *Opinion of witness as expert.*—Where the question at issue is as to the exten of injury caused by the submersion of cotton in water for a specified time a witness who had never seen the cotton in controversy, and who did not know how long the only submerged cotton he had ever seen had been in the water, is not competent to testify as an expert.

5. *Same.*—An eye-witness of a collision between a steamboat and a flat-boat, who was an officer of the steamboat at the time, and who had been engaged in running steamboats for nine or ten years, may testify, as an expert, that there was not a proper light on the flat-boat at the time of the collision; but not that "the collision would not have occurred" if there had been a proper light on the flat-boat.

6. *General objection to evidence.*—A general objection to evidence, a portion of which is admissible, may be overruled entirely.

APPEAL from the Circuit Court of Dallas.
Tried before the Hon. E. W. PETTUS.

THIS action was brought by Philip J. Weaver, against the appellee, (a corporation chartered by the legislature of this State,) as the owner of the steamboat *Isabella,* to recover damages for injuries and losses caused by a collision on the Alabama river, in June, 1855, between said steamboat and a flat-boat on which plaintiff had shipped certain bales of cotton at Selma, consigned to B. F. Marshall in Mobile. The number of bales of cotton is stated in the bill of exceptions at one place to be 365, and in another 465. No pleas appear in the record. It appeared from the evidence adduced on the trial, as the same is set out in the bill of exceptions, that the collision occurred a short time before day-break; that the steamboat was at the time ascending, and the flat-boat descending the river; that the flat-boat was sunk by the collision, and about one hundred bales of the plaintiff's cotton were submerged in the water for between twelve and twenty-four hours; and that all the cotton was taken on board of the steamboat, transported by her to Mobile, and delivered to the consignee. The plaintiff claimed damages for the deterioration in the value of the submerged cotton, the expenses incurred in re-picking and baling it, and the additional cost of its transportation to Mobile.

The plaintiff offered in evidence the deposition of B. F. Marshall, who, in answer to the 6th direct interrogatory, testified as follows: "On the arrival of the cotton

in Mobile, seeing its damaged condition, I deemed it desirable for the interest of all parties concerned to send the entire lot to the pickery, so that it might be there put in the best order. I paid $1566 60 for picking, drying, and re-packing said lot. Nothing was paid as salvage. Mr. Baker, the clerk of the *Isabella*, demanded $10 per bale salvage on the cotton, which I refused to pay. He also refused to deliver the cotton until I had paid his demand, and finally delivered it to me on my paying $1,000, under protest against the boat having any claim to salvage. Said sum was paid for account of plaintiff, who has since refunded or accounted for the same." The second cross-interrogatory to this witness, and his answer thereto, were in the following words : *Int.* "If, in your answer to the 6th direct interrogatory, you say that you paid any salvage, state how much, and whether the amount paid was all that was charged, or whether it was as much as had been agreed upon between the captains of the two boats. If you did not pay as much as was demanded by the captain or agent of the steamboat, why did you not? Was there not an agreement that you would pay so much, and leave the balance claimed to a future adjustment between the plaintiff and defendant, or otherwise ? Was there not some arrangement made as to the balance of salvage claimed, or some understanding about it? If yea, state what it was, and all that was said about it. Did not the captain or agent of the steamboat refuse to deliver the cotton to you, unless there should be some arrangement made, or some understanding had, in reference to the balance of salvage claimed ?" *Ans.* "I paid no salvage, but paid $1,000, under protest, to get possession of the cotton. More was exacted, to-wit, $10 per bale. *The claim of salvage, damages, &c., was to be left to legal decision.* The captain did refuse to deliver the cotton to me, unless there should be some understanding had, or arrangement made, in reference to the balance of salvage claimed ; but finally delivered it to me on my paying the $1,000." When the deposition was offered, the defendant objected to the italicized portion of this

answer, "on the ground that the same was illegal and irrelevant evidence." The court sustained the objection, and the plaintiff excepted.

"The plaintiff offered one John Brantley as a witness, who stated, that he had been a cotton-planter for many years; that he had lost cotton, and had cotton damaged, by being sunk in the water; that he had examined cotton that had been sunk; and that he remembered two occasions when he had made such examination, but did not know how long the cotton he had examined had been in the water. Upon this predicate, the plaintiff asked this witness, how much an ordinary bale of cotton would, in his opinion, be injured or damaged by being submerged in water from twelve to twenty-four hours. The defendant objected to this question, because the witness had not shown himself sufficiently acquainted with the effect of water upon cotton submerged in it, to be allowed to give his opinion on it; and because said testimony was not competent or legal. The court sustained the objection, and the plaintiff excepted."

"The plaintiff also offered Col. S. M. Hill as a witness, who testified, that he had been engaged for many years in the business of raising, buying, and selling cotton; that he had lost cotton in the river, and had had cotton injured by being submerged in the water; that he had examined other cotton at Mobile, which had been damaged by being in the water as it came down the Alabama river; that he himself had lost cotton but once—some nineteen years ago—and then did not examine it; and that afterwards he did not examine his own cotton when injured, because he had it insured, and it passed into the hands of the underwriters, and he had nothing more to do with it. The plaintiff asked him, how much injury or damage an ordinary bale of cotton would sustain by being submerged in the water from twelve to twenty-four hours. The defendant objected to this question, on the ground that the witness had not shown sufficient knowledge of the effect of water upon cotton submerged in it, to testify to his opinion. The court sustained the objection, and the plaintiff excepted."

The defendant offered in evidence the depositions of W. H. Abrams, the captain, S. B. Heath, the mate, and Isaac W. Wood, the engineer of the steamboat at the time of the collision. The plaintiff objected to each of these depositions, "on account of the interest of the witness in the event of the suit, and because the verdict and judgment would be evidence for them on another trial." The defendant then proved, "that said witnesses had each been released by the defendant from all liability to said company for negligence, want of skill, or any act of theirs connected with or relating to said collision, and for all existing liability of any and every kind whatever; that said release was drawn up in due form, and, by resolution of the president and board of directors of the company, was ordered to be executed by the proper officer, under the seal of the company, and to be spread upon its minutes; and that said witnesses, before they testified, were informed and knew that they were released." The court overruled the objection to the depositions, and the plaintiff excepted.

The witness Heath testified, that he had been employed in navigating steamboats for nine or ten years, and three or four years of that time on the Alabama river; that he was on watch on board of the steamboat at the time of the collision, and saw no light on the flat-boat; and that, "if the flat-boat had had on her a proper light, so as to have enabled the steamboat to have discovered it, the collision would not have occurred." The plaintiff objected to this last statement of the witness, "on the ground that the same was illegal and improper evidence." The court overruled the objection, and the plaintiff excepted.

The rulings of the court on the evidence, as above stated, are the only matters assigned as error.

BYRD & MORGAN, for appellant.

ALEX. WHITE, contra.

A. J. WALKER, C. J.—After the collision with the defendant's boat, the plaintiff's cotton was put upon it, and carried to Mobile. The plaintiff's factor paid the

officer of the steamboat one thousand dollars, which was reimbursed to him by the plaintiff. There was, therefore, a seeming acquiescence by the plaintiff in the payment by his factor of one thousand dollars, as a compensation for taking on board and transporting to Mobile the cotton which had been wrecked by the collision with the defendant's boat. This suit is predicated on the idea, that the wreck of the boat, freighted with the plaintiff's cotton, was produced by the negligence of the officers and crew of the defendant's boat. Upon this idea, the boat was simply repairing, to some extent, an injury wrongfully done, when it took the cotton from the wreck, and carried it to its destination. The unexplained fact of the payment to the steamboat would afford ground for the argument, that the plaintiff had, in effect, acknowledged that the wreck was not caused by the misconduct of the officers and crew upon the defendant's boat. For it might be argued, that the plaintiff would not so largely compensate a wrong-doer, for acts which merely contributed to repair the injury done. The evidence from which that argument might have been drawn, was necessarily brought out by the plaintiff, in showing the damage sustained. Anything which tended to meet and defeat that argument, was relevant evidence. Testimony that, at the time of the payment of the thousand dollars, it was agreed that the plaintiff's right to recover *damages should be left to legal decision*, would, in the point of view above indicated, be admissible; for it tended to show that the payment of the thousand dollars, viewed in the light of attending circumstances, did not involve an admission that the wreck was not produced by the misconduct of those who had the defendant's boat in charge.

In like manner, the payment of salvage, or the recognition of a right to it, would conduce to show an acknowledgment inconsistent with the allegation that the plaintiff's injury was caused by the wrongful act of the defendant's employees. It was, therefore, permissible for the plaintiff to prove, that the payment of the thousand dollars was not on account of salvage, and that he did not recognize any right to it.

[2.] The witness Marshall answered to the defendant's second cross-interrogatory: "I paid no salvage, but paid $1,000, under protest, to get possession of the cotton. More was exacted, to-wit, ten dollars per bail. *The claim of salvage, damages, &c., was to be left to legal decision.*" The last clause, put in italics, was excluded, on the defendant's motion. Viewing this clause in connection with the interrogatory, we understand it as asserting, that it was understood, or agreed, or said, that "the claim of salvage, damages, &c., was to be left to legal decision." The interrogatory contains questions inquiring why the witness did not pay as much as was required by the agent of the boat; whether there was not an arrangement that the plaintiff should pay so much, and leave the balance for adjustment; and whether there was not some arrangement made as to the balance of salvage, or some understanding about it; and the witness is directed to state what the arrangement was, and all about it. To those questions the excluded clause was manifestly responsive, and, considered in reference to them, has the meaning above stated. The evidence, having that signification, ought not to have been excluded. It tends to show that, at the time when the thousand dollars were paid, the claim of salvage, and the claim of damages, were left open for the arbitrament of the law; and having that tendency, was, for reasons above stated, relevant. The evidence being relevant, and having been brought out by the defendant's interrogatory, the court erred in excluding it on the defendant's objection.—Furlow v. Merrill, 23 Ala. 705; Edgar v. McArn, 22 Ala. 796.

[3.] The captain, mate, and engineer of the defendant's steamboat, appear to have been duly released by the defendant; and they were thus made competent witnesses. Their interest was altogether in favor of the defendant, and could, therefore, be released by the defendant.

[4.] The witness Brantley did not even pretend that he had seen the cotton here in controversy; and although, on two occasions remembered by him, he had examined other cotton which had been sunk, he did "not know how long the cotton he had examined had been in the

water." Upon such a predicate, the plaintiff had no right to ask him, 'how much an ordinary bale of cotton would, in his opinion, be injured or damaged by being submerged in water from twelve to twenty-four hours.' Gilmer v. City Council of Montgomery, 33 Ala. 116. The witness had neither knowledge, nor the means of knowledge, as to the extent to which an ordinary bale of cotton would be injured or damaged by submersion for the period of time specified in the question. A rule which would admit his opinion, responsive to the question, would admit the opinion of every person who had ever examined a submerged bale of cotton, although without any knowledge of the duration of its submersion. The action of the court in sustaining the objection to the question, is free from error. A witness cannot testify respecting a fact, of which he has neither knowledge, nor the means of knowledge.—Hiester v. Laird, 1 Watts & Serg. 245. Upon like reasoning, we hold, that there was no error in sustaining the objection to the question to S. M. Hill.

[5–6.] The mate of the steamboat, who was in command at the time of the collision, was permitted to testify, "that if the flat-boat had had on her a proper light, so as to have enabled the steamboat to have discovered it, the collision would not have occurred." The admission of this testimony is the point of an objection by the plaintiff. Considered as the declaration of an eye-witness, it involves the assertion, that there was not a proper light upon the flat-boat, and that with such a light upon the flat-boat the collision would have been prevented. What the witness swears, cannot be true, if either of those assertions is false. It was permissible for this witness to state whether there was a proper light upon the boat. He saw the boat before the collision occurred, and had an opportunity to know whether there was a light upon the boat, and if so, what was its character. It may be, that there was an expression of opinion as to what constituted a proper light; but if so, it would not make the testimony objectionable. The witness had been engaged in running steamboats, as mate, and in other capacities, for nine or

ten years, and four years of that time on the Alabama river. This experience was sufficient to qualify him to testify, as an expert, as to what constituted a proper light upon the boat.—Gilmer v. City Council of Montgomery, 33 Ala. 116; McCreary v. Turk, 29 Ala. 244.

The other branch of the testimony, "that the collision would not have occurred," was not admissible evidence. It does not bring to view a matter for the opinion of an expert. It may be that the testimony would have been admissible, if it had stated that the collision might or could have been averted. But it goes farther, and asserts that it would not have occurred; and, in doing so, asserts that every man, upon whose exertions an avoidance of the collision depended, would have had the will to put forth these exertions. This is not the subject for an expert's opinion.

The evidence was admissible for the purpose of showing that there was not a proper light upon the boat, but inadmissible for the purpose of showing that, in the opinion of the witness, the collision would not have occurred. We cannot decide that the court erred in overruling the objection to the entire evidence.

For the error pointed out, the judgment of the court below is reversed, and the cause remanded.