⌊Wills v. The State.⌋

# Wills *v.* The State.

### Indictment for Murder.

1. *Right of accused to be confronted by witnesses against him; showing of what absent State witnesses will prove can not be forced on him.*—In all criminal prosecutions it is a constitutional right of the accused "to be confronted by the witnesses against him," that he may see them face to face, and have the opportunity of cross-examination; and it is a deprivation of this right for the primary court to permit to be read in evidence, at the instance of the State. and against the defendant's objection, a written showing of what an absent State witness would prove, if present, which the defendant refused to admit for the purpose of obtaining a trial.

2. *Homicide; when doctrine of self-defense not applicable.*—The doctrine of self-defense is not available in a case of homicide, where the defendant himself was the aggressor, or was not reasonably free from fault in bringing on the difficulty; nor can it be invoked unless the evidence tends to show that the defendant was, or appeared to be so menaced, at the time, by some overt act on the part of the assailant, as to create in his mind a reasonable apprehension of danger to his life, or of the infliction upon him of some grievous bodily harm, and that there was no other reasonable mode of effecting his escape from such impending danger.

3. *Murder; when charge requested misleading, and properly refused.* On the trial of two defendants jointly indicted for murder, a charge requested by them, which might be construed to authorize the jury to acquit both, if they entertained a reasonable doubt as to the guilt of either, is misleading and erroneous.

APPEAL from Talladega Circuit Court.

Tried before Hon. LeRoy F. Box.

Randall Wills, the appellant, and Jane Wills, his wife, were,

[Wills v. The State.]

in this case, jointly indicted for the murder of Lucy Coleman. The appellant was convicted of manslaughter in the first degree, and sentenced to the penitentiary for four years; but his wife was acquitted. As recited in the bill of exceptions, "said cause being called for trial, the State announced that it was not ready for trial on account of the absence of Cora Hughes *alias* Cora Dickerson, who was also a witness for the defendant, as well as for the State; and the defendant not resisting *this application*, the court, on its own motion, required the State to make out a written showing as to what said absent witness would testify, if present, in this case." The showing is then set out in the bill, and then follows this recital: "And said showing so made out was submitted to the defendant, and he, by his counsel, announced that he would not admit that said witness would testify what is set out in said showing; and thereupon the court, against the objection of the defendant, required him to admit that said witness, if present, would testify as stated in said written showing, subject to any legal objection defendant might make to said testimony for irrelevancy, or any other ground of illegality, inadmissibility, or incompetency; to all of which the defendant objected, and the court overruled his objection, and the defendant excepted. And this admission the defendant at the time declined to make." Thereupon, the defendant not being ready for trial, the court required him to make out and submit to the prosecution his showing as to what he expected to prove by three witnesses, who were absent, one of whom was the said Cora Hughes, *alias* Cora Dickerson. This was done, but the defendant "did not require the prosecution to admit the showing, unless he was required to go to trial with their said showing for the State against him." This showing the State admitted. On the trial the State was allowed, against the defendant's objection, to read in evidence the showing as to what the witness, Cora Hughes, *alias* Cora Dickerson, would prove, made under the direction of the court as above stated; and to this ruling the defendant excepted. The ground of the objection was, that the defendant had not admitted that the witness would so testify, if present.

It does not appear to have been controverted on the trial, that the appellant, in an attempt made by him to shoot one Jesse Coleman, the husband of Lucy Coleman, with a pistol, shot her, and that she died on the next day from the effects of the wound; or that, at the time of the fatal occurrence, the parties were in appellant's field, and near his dwelling. The evidence introduced on behalf of the prosecution tended to show that the appellant was the aggressor, and that neither the deceased nor Jesse Coleman, her husband, at the time of the difficulty, made any hostile demonstrations towards him or his

[Wills v. The State.]

wife. The evidence for the defense, however, tended to show that Jesse Coleman and his wife came into appellant's field, where he and his wife were at work, and, after cursing them, beat them both with an axe-handle; and that the appellant, leaving his wife in the field, went to his house, armed himself with a pistol, returned, and fired twice, one being the fatal shot. What Jesse Coleman and his wife were doing when the fatal shot was fired, is not shown by the evidence for the defense. A declaration made by the appellant, at the time he went to the house after the pistol, that "Jesse Coleman and Lucy are in my cotton patch, and Jesse is beating my wife, and says he is going to kill me and her both," was, however, in evidence; and it was also shown that said Jesse, on the day previous, attempted to beat the appellant, but was prevented by a third party, and that, at the time, he told the appellant that he intended to "jump on him and beat him to death yet."

The appellant asked the court, in writing, to give the following charges to the jury: "1. If the jury believe from the evidence that the defendant Randall Wills fired the pistol at Jesse Coleman to protect himself or his wife from great bodily harm or impending danger, and the shot took effect, and killed Lucy Coleman, then they must acquit the defendant." "4. If the jury have a reasonable doubt as to the defendants' guilt, or either of them, either one or both of said defendants, either or both of them are entitled to the benefit of that doubt, as a matter of right, and they must acquit the defendants." "8. The law does not require a man to run off or abandon his wife, while her life or limb is in danger; and if the jury believe from the evidence that Randall Wills returned to the point where the killing occurred, then he had a right there; and they may look to the evidence to determine this fact, and may acquit him." These charges the court refused to give, and the appellant duly excepted.

The rulings above noted are here assigned as error.

Geo. W. Parsons, for appellant.

H. C. Tompkins, Attorney-General, for the State.

SOMERVILLE, J.—It is an imperative provision of our Bill of Rights, that in all criminal prosecutions the accused has a constitutional right "to be confronted by the witnesses against him."—Decl. Rights, Const. 1875, Art. 1, § 7. The same right is secured in the Constitution of the United States, and is a recognized principle in, perhaps, all of the various American States, either in the form of constitutional or statutory provisions. Its purpose is plain. It was to require the witnesses

against the accused to be produced in open court, so that he may see them face to face, and have the opportunity accorded him to cross-examine them, during the *viva voce* rendition of their criminating testimony.—1 Bish. Cr. Proc. § 1090 ; *Com. v. Ricketson*, 5 Met. 412 ; *State v. Thomas*, 64 N. C. 74 ; *Jackson v. Com.*, 19 Grat. 656.

If, therefore, the witnesses for the State or government be absent, as a general rule, there is no known mode by which their *ex parte* statements against the accused can be used in evidence for the purpose of his conviction without his consent. "The exceptions to this rule," as observed by Mr. Cooley, "are of cases which are excluded from its reasons by their peculiar circumstances ; but they are far from numerous."—Cooley's Const. Lim. (4th Ed.) *318. These exceptions are fully discussed in *Marler v. The State*, 67 Ala. 55, and we need not again enumerate them. It is enough that there is no contention that they embrace the case under consideration.—1 Greenl. Ev. 163 ; 2 Best. Ev. § 496 ; 1 Phil. Ev. 389.

This right of the accused to be confronted in open court by the witnesses against him was a provision of *Magna Charta*, and was also probably recognized by the ancient common law. 1 Bish. Cr. Proc. § 1090. But it was sometimes doubted by the writers on the common law in England, and was often denied in practice, notably in the case of Sir Walter Raleigh, who on his trial, as remarked by Mr. Greenleaf, earnestly demanded "that he might see his accuser face to face ;" protesting against "the admission of a statement in the form of the substance of an examination taken in his absence ; but this was denied him, and the examination was admitted."—3 Greenl. Ev. § 11 ; 2 Hawk. P. C. B. 2, Ch. 46, § 9. There can be no doubt of the fact that the framers of our constitution designed to clearly establish and make irrepealable by legislative or judicial action, this invaluable prerequisite to securing a fair and impartial trial by jury.

It is manifest, in the light of these principles, that the action of the circuit court, assigned for error, deprived the defendant of the benefit of this constitutional privilege. The written statement, or showing, as to what the absent witness for the State, Cora Dickerson, would prove if present, was clearly inadmissible as evidence against the prisoner *without his consent.* The court had no authority to require the defendant to admit that such witness, if present, would testify as stated in such showing. He could demand the personal presence of the witness in open court, so as to confront her, face to face, and subject her to the scrutiny of a cross-examination. The court, in its ruling on this subject, denied to the defendant a clear constitutional right.

[Wharton v. The State.]

We see no error in refusing to give the written charges requested by the defendant. Two of these charges, numbered one and eight respectively, purport to be an exposition of the doctrine of self-defense, applicable to cases of excusable homicide. This doctrine is not available where the defendant was himself the aggressor, or was not reasonably free from fault in bringing on the difficulty.—*Leonard v. The State*, 66 Ala. 461; *Cross v. The State*, 63 Ala. 41; Cases Self. Def. (H. & T.) 24. Nor can the principle be invoked unless the evidence tends to show that the defendant was, or appeared to be so menaced, at the time, by some overt act on the part of his assailant, as to create in his mind a reasonable apprehension of danger to his life, or else the infliction upon him of some grievous bodily harm, and that there was no other reasonable mode of effecting his escape from such impending peril.—*Ingram v. The State*, 67 Ala. 67; *Ex parte* Brown, 65 Ala. 446; 1 Bish. Cr. Law, §§ 842 *et seq.* The charges were erroneous in ignoring these essential elements of this general principle, or doctrine.

The vice of the charge numbered four lay in the fact that it might be construed to authorize the jury to acquit *both* of the defendants on trial, if they entertained a reasonable doubt as to the guilt of *either one* of them. This was not only misleading, but clearly erroneous.

The judgment of the circuit court must, however, be reversed for the error first considered, and the cause remanded for a new trial. Let the prisoner, in the meanwhile, be retained in custody until discharged by due course of law.