# Tesney *v.* The State.

### *Indictment for Murder.*

1. *What witness, testifying negatively as to words used, may state as to his position.*—A witness who was present at the rencounter between the defendants and the deceased, and who testifies that he did not hear the deceased curse or swear as he rode up to the place where the others were, as another witness testified he had done, may further state that he was in such position at the time that, if the words had been used, he could have heard them; being subject to cross-examination as to the particular facts, which would show to what weight his testimony was entitled.

2. *Defendant's declarations; when admissible as evidence for him in rebuttal.*—Who brought on the difficulty being a controverted question of fact, and the prosecution having adduced evidence tending to show that the defendant went to the place for the purpose of killing the deceased; it is permissible for the defendant to show, in rebuttal, his refusal to go to the place when first asked, the reasons assigned at the time for his refusal, and the circumstances under which he went soon afterwards.

3. *Experts, as witnesses.*—Whether a witness possesses the necessary qualifications to testify as an expert, is a preliminary question addressed to the court, and much must be left to its discretion; and if the witness be competent as an expert, he may state his opinion, and detail generally the facts on which it is based.

4. *Proof of distance between parties when shot was fired.*—For the purpose of showing the distance between the parties when the deceased first fired a pistol at the defendant, as indicated by the marks of powder on the clothes, or the want of such marks, it is not permissible to exhibit to the jury a coat similar to that worn by the defendant at the time, and show the effect of a single experiment in firing at it.

5. *Proof of character of deceased.*—As tending to show the character of the deceased as a turbulent and violent man, a witness may be asked if he had not heard that the deceased, a short time before he was killed, had "had several rows and shooting scrapes in another county."

6. *Self-defense.*—The decisions of this court, as to the doctrine of self-defense, have settled these principles: that, to excuse the taking of human life, there must exist a present, pressing necessity to prevent the

3

commission of a felony, or the infliction of great bodily harm, or such apparent necessity as would create, in the mind of a reasonable and prudent man, a belief that such necessity actually existed; that the defendant, if he was the aggressor, or was instrumental in bringing on the difficulty, is precluded from setting up the plea of self-defense; and that, if the deceased was the assailant, the defendant must have retreated, unless retreat would have endangered his safety, or there was no reasonable mode of escape.

7.   *Same ; charge as to.*—A charge which instructs the jury that, "before the defendant can successfully set up the plea of self-defense, he must show a pending and pressing necessity to strike," is erroneous, because it ignores the sufficiency of an apparent necessity.

8.   *Presumption of malice from use of deadly weapon.*—The use of a deadly weapon, from which the law infers malice, casts on the defendant the *onus* of disproving it, unless the presumption is rebutted by the proved circumstances attending the killing; but the presumption may be rebutted by other evidence than that which proves the killing.

9.   *Charge objectionable for generality, or tending to mislead.*—A charge given, which asserts a correct legal proposition, though objectionable on account of its generality, or because tending to mislead the jury, is not a reversible error; the party complaining of it should protect himself by asking a qualifying or explanatory charge.

10.   *Charges requested, tending to mislead, or ignoring material facts.* A charge requested, which, when applied to the evidence, has a tendency to mislead the jury, or withdraws from their consideration any material fact which the evidence tends to establish, is properly refused.

From the Circuit Court of Walker.

Tried before the Hon. S. H. Sprott.

The indictment in this case charged that the defendants, Green Tesney and William L. Tesney, unlawfully and with malice aforethought killed George King, " by stabbing or cutting him with a knife," or, as alleged in the second count, " with some sharp instrument, to the grand jury unknown." Being arraigned, the defendants each pleaded not guilty, and they were jointly tried on issue joined on that plea ; each being convicted of murder in the second degree, and sentenced to the penitentiary, Green Tesney for the term of twenty-five years, and William L. Tesney for twelve years.

The bill of exceptions purports to set out " substantially all the evidence in the case," but does not state it in the order in which it was introduced ; and in stating the various objections to evidence, it is impossible to state what evidence was already before the jury.   It was shown that the killing occurred in said county, about sunset, on the evening of December 16th, 1881, at a store kept by W. R. King, the father of the deceased ; the defendants, with one John Tipper, having stopped there a short while before the deceased, with his two brothers, rode up and alighted ; and as the deceased entered or approached the store, he was caught or stopped by Green Tesney, whom he shot with a pistol, and by whom he was stabbed seven or eight times with a common pocket-knife.   The evidence for the prosecution " tended to show that the defendants had gone to said store, on

[Tesney v. The State.]

the evening of the difficulty, with the intention of killing George King, the deceased ; while the defendants' evidence tended to show that they had gone there on legitimate business, and with no unlawful purpose. The testimony of the State tended to show that Green Tesney killed the deceased maliciously and unlawfully, and that William Tesney aided and abetted him in the killing; while the evidence offered by the defendants tended to show that, when Green Tesney inflicted on the deceased the mortal wound or wounds, the deceased was attacking or assaulting him with a pistol ; and that Green Tesney had not provoked the difficulty, and was not at all in fault ; and that William Tesney did nothing in aid of his brother to encourage him in the killing ; and that Green Tesney inflicted the mortal wound or wounds on the deceased in the necessary defense of his life, or to save himself from great bodily harm."

W. R. King, the father of the deceased, a witness for the prosecution, " having testified, on his direct examination, that he did not hear George King curse or swear as he rode up, just before the difficulty, to the store where Green Tesney was standing; the defendants asked him, on cross-examination, ' Were you in a position where you could have heard George King curse or swear, if he had done so, as he rode up to the store ?' The State objected to this question, on the ground that the witness ought to state his own position and that of George King, and let the jury determine whether he was in a position to have heard ; which objection the court sustained, and the defendants excepted."

" The defendants offered to prove, by said John Tipper, that when he and William Tesney proposed to go by the house and store of said W. R. King, the evening on which George King was killed, Green Tesney refused to go by with them, remarking that he did not want to go because George King did not like him, and told them to hurry up, and that he would wait for them at the forks of the road. The State objected to this evidence, and the court sustained the objection ; to which ruling the defendants excepted. Said W. R. King had testified, that William Tesney told him Green Tesney was at the forks of the road, and asked him if he would have a friendly conversation with Green ; that he said he would, and thereupon William Tesney went after Green, and brought him to the store."

The defendants offered Dr. Camack as a witness, who had been called in to dress the wound of Green Tesney, and who, after describing its location and character, further testified, " that he had examined the clothes of Green Tesney, to discover if there were any signs or indications of powder about them, or of powder-burns, and that he could discover none. He testified, also, that he had practiced medicine and surgery

[Tesney v. The State.]

for fifteen years, had handled fire-arms very frequently, and was skilled in their use, especially in the use of a pistol. The defendants asked said witness, if George King's pistol was against the body of Green Tesney, or within six inches of it when the pistol was fired, whether or not there would have been signs or indications of powder or powder-burns about the clothing of said Tesney when he made the examination that night. The State objected to this question, on the ground that said witness did not pretend to have any more knowledge than any other person, as to powder-burns, or stains from the firing of a pistol; which objection the court sustained, and the defendants excepted. The evidence which had been introduced by the State tended to show that, when said King shot Green Tesney, King was lying on the ground, and Green Tesney was on him, and the muzzle of the pistol was against Green Tesney's body, or within five or six inches; while the defendants' testimony tended to show that King shot said Tesney from his horse, and while Tesney was three or four paces distant. The defendants then asked Dr. Camack this question: 'If it was his opinion that the pistol which wounded Green Tesney was fired from a position above him, or not.' The State objected to this question, and the court sustained the objection; to which ruling the defendants excepted. The State offered John King as a witness, in rebuttal, and asked him, if he had ever shot, or seen a pistol shot, at a dark woollen coat, within four or five inches of it; and the witness was allowed by the court to state, against the objection of the defendants, that he had that morning, at the instance and request of the solicitor, procured a dark woollen coat, similar in appearance and color to that worn by Green Tesney at the time of the difficulty, and had taken the pistol said Tesney was shot with, and, in the presence of others, had shot within four or five inches of the coat, and that there was no sign or mark of powder-burn about it. The witness produced the coat, and it was shown to the jury, against the objection of the defendants; and the defendants excepted."

"The State offered Carter Scott as a witness, in rebuttal, to prove that the general character of said George King was not that of a dangerous or turbulent man, the defendants having introduced evidence to the contrary; and the witness said, that it was not. The defendants asked said witness, on cross-examination, if he had not heard of said King, a short time before he was killed, going over into Winston county, and having several rows and shooting scrapes over there. The State objected to this question, and the court sustained the objection; to which the defendants excepted."

"The court charged the jury, on the subject of self-defense, as follows: 'It is true that a man has a right to strike in self-

[Tesney v. The State.]

defense, even to the taking of life, in order to save his own life, or to prevent grievous bodily harm, or to prevent the commission of a felony. But self-defense can only be interposed when the defendant was without fault in provoking or bringing on the difficulty, *and there was no other reasonable mode of escape.* If a defendant provokes or brings on a difficulty, or enters willingly into a mutual combat, *or if he can retreat without increasing his danger, he can not set up self-defense. It is the duty of the defendant, in order to avoid taking life, to retreat, if he can do so with reasonable safety. If it comes to a question, as to whether one man shall flee or another shall live, the law decides that the former shall flee, rather than the latter shall die.'* The defendants excepted to this charge, and especially to" the several italicized portions.

The defendants excepted, also, to several charges given by the court on the request of the solicitor, among which were the following : (2.) "A weapon, not deadly in itself, may become a deadly weapon, according to the manner in which it is used, the force used, and the place upon which it is used. A common pocket-knife, used with force in stabbing another in a vital part, and which results in immediate death, is a deadly weapon." (3.) "If Green Tesney unlawfully killed George King with a deadly weapon, the law will adjudge him guilty under this charge, unless the evidence which proves the killing rebuts the presumption of guilt." (6.) "Before a defendant can set up the plea of self-defense successfully, he must show that there was a pending and pressing necessity to strike, that there was no reasonable mode of escape to avoid the difficulty, and that he was without fault in bringing on the difficulty."

HEWITT, WALKER & PORTER, for the appellants.

T. N. McCLELLAN, Attorney-General, for the State.

CLOPTON, J.—Whether the witness, W. R. King, was in such position that he could have heard the deceased curse or swear, when he rode up to the store, if he had done so, may be said, in one sense, to be an opinion, but, in another sense, it is a fact ; as said by Mr. Wharton, a " mere short-hand rendering of the facts." On cross-examination, the relative positions of the parties, the distance from each other, and other attendant circumstances, could have been elicited, from which the jury might infer the weight to which his answer was entitled. A controverted question in the case was, who provoked or brought on the difficulty ? The witness had already testified, that he did not hear the deceased curse or swear, as he rode up ; while there was other testimony tending to show that he did. It

[Tesney v. The State.]

was competent for the defendant to show that the witness was not in a position to hear.

2. As tending to show the motive which moved the defendant, Green Tesney, to go to the store, and as tending to cast some light on the controverted question, by whom the difficulty was brought on, the court should have permitted the defendant to show his refusal to go to the store, and his reason for refusing, as then stated. The prosecution had introduced evidence tending to show that the defendant went to the store for the purpose of killing the deceased. It was permissible for the defendant to rebut this evidence, by proving his refusal to go; and the circumstances under which he did go subsequently. Acts and declarations, occurring so shortly before the main fact, as to be directly connected with it, and to exclude the idea of fabrication or design, may be regarded as cotemporaneous; and are admissible, if pertinent to the issue, and tending, though dimly, to elucidate the controverted matters. The sufficiency of the evidence is addressed to the jury.

3–4. Whether a witness possesses the necessary qualifications to testify as an expert, is a preliminary question addressed to the court, and much must be left to the discretion of the presiding judge. The jury, having the facts, were as competent to form an opinion as to the position of the deceased when he fired the pistol, as a physician. The witness did not show that he had any experience in respect to the requisite proximity of a pistol to leave signs or indications of burnt powder on the clothing. A person may be skillful and experienced in the use of fire-arms, and have no observation or experience in respect to the particular matter inquired about.— *Weaver v. Ala. Coal Min. Co.*, 35 Ala. 176. But the court erred in permitting evidence of the result of a solitary experiment of firing at a coat similar to the one worn by defendant, and the exhibition of the coat to the jury. Such evidence superinduces the mischief of trying a collateral controverted matter by proving separate and distinct experiments, with results as variant as the manner of loading the pistols, and the modes of making the experiments, dependent more or less on the wishes and feeling of the person making them, and tends to confuse the jury, and withdraw their minds from the consideration of the main issue. The witness, if an expert, may give his opinion, and detail generally the facts on which it is based; whereby the value of the opinion, and of the evidence on which it is founded, is submitted to the jury.—*McCreary v. Turk*, 29 Ala. 244.

5. There was error in refusing to permit the defendants to ask the witness Scott, on cross-examination, if he had not heard that the deceased, shortly before he was killed, had several rows

and shooting scrapes in Winston county. The relevancy and competency of the evidence was expressly ruled in *DeArman v. State*, 71 Ala. 351.

6. The circumstances, under which the accused may invoke the plea of self-defense, have been well and uniformly settled by our decisions. To excuse the taking of life, there must exist a present, pressing necessity to prevent the commission of a felony, or of great bodily harm, or such apparent necessity as would create in the mind of a reasonable, prudent man a belief that it actually existed. If the accused is the aggressor, or is instrumental in bringing on the difficulty, he is precluded from setting up self-defense. He can not avail himself of a necessity brought about, or created by himself. If the deceased is the assailant, the party assailed must retreat, unless retreat will endanger his safety, and must refrain from taking life, if there is any other reasonable mode of escape.—*Brown v. State*, 74 Ala. 478; *Wills v. State*, 73 Ala. 362; *DeArman v. State*, 71 Ala. 351; *Eiland v. State*, 52 Ala. 322. The general charge of the court, on the doctrine of self-defense, accords substantially with these principles.

7. The charge given at the request of the solicitor, that "*before a defendant can set up the plea of self-defense successfully, he must show a pending and pressing necessity to strike*," is too narrow and restricted. It ignores the sufficiency of an apparent necessity.

8. Whether a particular weapon used is deadly or otherwise is, in many cases, a question for the jury, to be determined from the description of the weapon, the manner of its use, the nature and locality of the wound, and the other circumstances proved. An ordinary pocket-knife may be a deadly weapon. *Sylvester v. State*, 71 Ala. 17. There was error, however, in charging the jury, that if the defendant killed the deceased with a deadly weapon, the law will adjudge him guilty, unless the evidence which proves the killing rebuts the presumption of guilt. The accused may rebut the presumption of malice, arising from the use of a deadly weapon, by evidence other than that introduced to prove the killing. The use of a deadly weapon, from which the law infers malice, casts on the defendant the *onus* of disproving it, unless the proved circumstances attending the killing rebut the presumption.

9. The other charges, given at the request of the solicitor, assert correct legal propositions; and if considered objectionable, because of their generality, or because calculated to mislead the jury, qualifying or explanatory instructions should have been asked.

10. Charges should be framed in reference to the evidence; and if their tendency is to mislead, or they withdraw from the

[Tesney v. The State.]

consideration of the jury any material fact, which the evidence tends to prove, they may be properly refused. The first three charges requested by the defendants omit from the facts hypothetically stated either the freedom from fault in bringing on the difficulty, or willingness to enter into combat, or the ability to retreat without endangering safety. The others are argumentative.

From an application of these principles to the different phases of the case, as presented by the record, it results : If the defendant, Green Tesney, went to the store with the intention, and for the purpose of provoking a difficulty, and did provoke, or was instrumental in bringing it on; or if he went there without such intention or purpose, and willingly entered into the fight, when he could have reasonably avoided the same, and, during its progress, inflicted the mortal wounds intentionally, and William Tesney aided and encouraged him, the defendants are guilty of murder, or manslaughter, as the jury may find that the killing was with or without malice. If, however, the defendants went to the store with peaceful intentions, and for a legitimate purpose, and the deceased, on riding up and discovering who Green Tesney was, attacked him with a pistol, so suddenly, and in such perilous proximity, that an attempt to retreat would have endangered his safety ; and he struck the fatal blow under a present pressing necessity to prevent great bodily harm, or a reasonable apprehension that such necessity existed, and was without fault in bringing on the difficulty, they are not guilty of any criminal offense.

The jury must be satisfied beyond a reasonable doubt—not a capricious or fished doubt, but a doubt from which the mind is not reasonably free—of the truth of every material fact, necessary to the guilt of the defendant. If they entertain a reasonable doubt as to any such fact, or whether the killing was in self-defense, construed by the principles we have stated, the defendants are entitled to an acquittal.

We discover no error in the other rulings of the court.

Reversed and remanded. Defendants will remain in custody, until discharged by due course of law.