# McKee *v.* The State

*Indictment for Murder.*

1. *Indorsements on indictment, showing its return and filing.*—When an indictment is indorsed "A true bill," which indorsement is signed by the foreman of the grand jury, and is duly marked *Filed* by the clerk, with the date of the filing; these indorsements show a substantial compliance with statutory provisions (Code, § 4821), and are sufficient to prove its authenticity as a record.

2. *Objections to venire ; mistakes in names of jurors* —Mistakes in the names of persons summoned as jurors in a capital case, and the repetition of the same name a second time, are not sufficient grounds for quashing the *venire*.

3. *Opinion, or statement of fact; to what witness may testify.*—A witness, who saw and examined the fatal wound received by the deceased, may describe its appearance, so that the jury may determine whether the blow was struck from behind or before; but the witness can not state his own opinion as to the direction from which the blow came.

4. *Charge as to sufficiency of evidence* —A charge instructing the jury, in a criminal case, "that if, after a careful consideration and examination of all the evidence in the case, they still have an abiding conviction to a moral certainty that the defendant is guilty, this is sufficient to authorize them to find him guilty," is not erroneous.

5. *Self-defense; charge ignoring duty to retreat.*—A charge asked in a

[McKee v. The State.]

capital case, asserting the right of self-defense, but "ignoring entirely the duty resting on all, even when in peril, of retreating, or withdrawing from the conflict, if practicable, when it can be done without increasing the peril, or rendering the means of defense less available," is properly refused.

6. *Charge as to weight of defendant's own testimony.*—While it is true that the jury should not capriciously disregard the testimony of the defendant himself, any more than that of any other witness; yet a charge which instructs them that they "must give it the same consideration they would any other witness," is properly refused, since it is for the jury to decide what weight they will give to the testimony of any witness.

7. *Charge as to presumption of malice from use of deadly weapon, when blow is struck "on the spur of the moment."*—A charge asked, instructing the jury that, if they believed the fatal blow was "struck with a stick picked up on the spur of the moment, without previous selection or preparation, then they should not presume that it was struck with malice from the use of the stick alone," is properly refused, when it appears that the weapon used was a hand-spike, which, from its size, was likely to produce death.

8. *Homicide by blow not intended to kill.*—A charge instructing the jury that, "if they believe from the evidence the defendant did not mean to voluntarily deprive the deceased of life by striking him with the hand-spike, then he can not be guilty of anything more than manslaughter in the first degree," is erroneous, and is properly refused.

FROM the Circuit Court of Butler.

Tried before the Hon. JOHN P. HUBBARD.

The defendant in this case, Pleas. McKee, was indicted for the murder of Charles Poole, by striking him with a stick; pleaded not guilty, was convicted of murder in the second degree, and sentenced to the penitentiary for the term of ten years. The trial was had at an adjourned term of the court, regularly called and held. Before entering on the trial, the defendant moved to quash the special *venire*, on three grounds: 1st, that the name of A. W. Carter appeared on the original *venire*, while the name R. W. Carter was on the list served on him; 2d, that the name of J. J. Bush appeared twice on the original and on the copy; 3d, "that the clerk never made out a list of the jurors drawn by the court, nor issued any order in writing to the sheriff to summon a special jury, as required by the 5th section of the act approved February 17th, 1885." On the hearing of this motion, the sheriff testified that he wrote Carter's name on the list of jurors served on the defendant, and that the first initial was intended for an *A*, and was not an *R;* and he and several others testified, also, that they knew but one J. J. Bush in the county, though the name was twice drawn out of the jury box, on different slips of paper. It was shown, also, "that the clerk made no list of the special jury drawn by the court for the trial of the defendant, and made no order to the sheriff, in writing or otherwise, to summon said

jury; that the sheriff summoned the jury by the direction of the presiding judge, without any list made out by the clerk, or any order in writing issued by the clerk, as required by the 5th section of said act approved February 17th, 1885; that the defendant was in court on the day when the jury was selected; that the slips of paper drawn from the jury-box, with the names on them, were given to the sheriff and clerk as drawn, and the sheriff made a list, and summoned and served on the defendant the same names thus drawn." On these facts, the court overruled the motion to quash the *venire*, and the defendant excepted.

It was proved on the trial, as the bill of exceptions states, that the homicide was committed seven or eight years ago; that a party of negroes, including the deceased, were engaged in rolling logs, when several others passed by, one of them being the defendant, and stopped to assist; that most of them got to drinking, and some fell to fighting; that the defendant picked up "a hand-spike, a seasoned hard stick, about four feet long, two inches in diameter in the middle, and tapering towards each end," and struck the deceased over the head, holding the stick with both hands; and that the deceased died, during the evening of the same day, from the effects of the blow. The witnesses for the prosecution testified, that no words passed between the defendant and the deceased; that the latter had not taken any part in the fighting, but was standing quietly leaning against a stump or tree, when the defendant ran up and struck him; while the witnesses for the defense testified, in substance, that the deceased had cut another negro, and, on defendant's interfering, advanced on him with his open knife in his hand; that the defendant retreated backwards, picking up the hand-spike as he moved, warned the deceased not to advance on him, and struck as he continued to advance. The testimony for the prosecution tended to show that the deceased was struck from behind, turning his head just as the blow fell. One Peagler, a witness for the defense, who had helped to dress the wound, and had described it, was asked by the defendant these questions: "From the place of the wound on the head, could it have been made by a blow struck from behind?" "Was the wound stricken from the front, or from behind?" "If the defendant was standing against a tree, looking in a different direction from the defendant, could this wound have been made as it is by defendant, with a hand-stick, coming up behind the deceased?" On objection by the State, the court refused to allow these several questions, "and then stated, that the defendant would not be allowed to prove the opinion of said Peagler,

[McKee v. The State.]

as to whether the wound was produced by a person in front of the deceased, or behind him, but that he might prove all the facts and circumstances, so that the jury might determine, as it was for them to decide, and not for the witness;" to which several rulings the defendant duly excepted. Dr. Owen, the physician who dressed the wound of the deceased, was also examined as a witness by the defendant, and, after describing the wound, "was asked for his medical opinion, as to whether the wound was given by a person standing in front of the deceased, or behind him;" which question the court refused to allow, and the defendant excepted.

The defendant asked the following (with other) charges in writing, and duly excepted to the refusal of each:

"4. If the jury believe, from the evidence, that the deceased was making a violent assault on the defendant with a drawn knife, and the defendant struck with a hand-stick to prevent the deceased from inflicting on him great bodily harm; then he is guiltless under the law, and their verdict should be for the defendant, unless they believe the defendant brought on the difficulty."

"8. If the jury believe, from the evidence, that the circumstances around the defendant at the time he struck the fatal blow were such as to impress his mind with the reasonable belief that his life was in imminent peril, or that he was in danger of great bodily harm; then he had the right to strike, even to the taking of the life of the deceased; and if the blow was stricken under such circumstances as to impress the mind of a reasonable man that his life was in danger, or [that he was] in danger of great bodily harm, their verdict should be for the defendant, acquitting him entirely."

"9. The danger which will excuse the defendant need not be actual, but should be such as to impress the mind of a reasonable man that the danger to life is imminent, or that [he] is in imminent danger of great bodily harm; and if the jury believe from the evidence, after considering all the evidence, that the defendant struck the blow with the hand-stick, honestly believing that his life was in danger, or that he was in danger of great bodily harm, and that the circumstances proved are such as a reasonable man would have acted on and struck, then they should find the defendant not guilty."

"10. If the jury believe, from the evidence, that there had never been any unkind feelings between the deceased and the defendant; and that the deceased was advancing towards the defendant in a threatening manner, with an open

[McKee v. The State.]

knife in his hand; and that the defendant struck him to save his own life, or to save himself from great bodily harm; then they should find him not guilty, unless he brought on the difficulty."

"11. In arriving at their conclusions, as to whether the defendant struck the blow in self-defense, the jury may look at the facts, if proved, that the defendant had a good character for peace; that there never was any unkind feeling whatever between him and the deceased up to that time; that the parties had no quarrels or words; that the deceased had a knife in his hand, coming towards the defendant; also, the suddenness of the encounter, together with all the other testimony in the case; and if, after considering all the testimony in the case, the jury believe that the defendant struck the blow under the reasonable belief that his life was in imminent peril, or that he was in danger of great bodily harm, they should find him not guilty, unless they also believe, beyond all reasonable doubt, that he brought on the difficulty, or provoked it."

"17. If the facts and circumstances proved in this case are such as to satisfy the jury that the defendant, at the time he struck the fatal blow, had reasonable grounds to believe that his life was in imminent peril, or that he was in danger of great bodily harm, or that there · was reasonable ground for believing the danger imminent that such design would be accomplished, and the defendant struck under this reasonable belief; then the killing would be justifiable, although it might afterwards appear that there was no danger, or that the appearance was false; and they should find the defendant not guilty, if such is their view of the testimony, unless they believe he brought on the difficulty."

"22. If the jury believe, from the evidence, that the deceased attacked the defendant with a deadly weapon (a drawn knife), then he is not required by law to retreat."

"25. If the jury believe, from the evidence, that the defendant did not mean then to voluntarily deprive the deceased of life, by striking him with the hand-spike; then he can not be guilty of anything more than manslaughter in the first degree."

"2b. Before the jury can find the defendant guilty of manslaughter in any degree, they must be convinced from the evidence, beyond a reasonable doubt, that the defendant killed the deceased willfully, which means on purpose; deliberately, which means on reflection; maliciously, which means with a wickedness or depravity of heart towards

either a single individual or mankind in general ; and premeditatedly, which means determined beforehand."

" 3c. The defendant had a right to interfere, to keep the peace , and if such interference to preserve the peace, and to prevent the deceased from cutting Lewis Perry or any other person, caused the deceased to attack the defendant with a knife, in such a manner as to create in defendant's mind a reasonable belief that his life was in danger, then defendant had a right to strike the blow in self-defense, even though such blow caused the death of the deceased."

" 4d. If the jury find, from the evidence, that the deceased attacked the defendant with a knife, in a menacing attitude, defendant had a perfect right to strike the blow in self-defense, even though the blow caused the death of the deceased."

· " 8h. If the jury believe that the testimony of any of the witnesses in this case is unreasonable, unnatural, and inconsistent with truth, it is their duty to reject such evidence."

" 9i. If the witnesses for the State in this case swore to an unnatural and unreasonable tale, then the jury have a right to set aside such evidence, and find, if they can, the truth of the case."

" 13m. The jury must not capriciously reject the testimony of the defendant himself, but give it the same consideration they would any other witness."

There were other charges given and refused, to which exceptions was reserved, and which are set out in the opinion of the court.

GAMBLE & RICHARDSON, for the appellant.

THOS. N. McCLELLAN, Attorney-General, for the State.

STONE, C. J.—1. Before entering upon the trial in this case, it was objected by the defendant, that the record failed to show that the indictment had been returned to the court by, and in the presence of the grand jury.—Code of 1876, § 4821. On this account it was contended in the court below, and the contention is renewed here, that what is claimed as an indictment, is wanting in evidence to prove its authenticity as a record. There is indorsed upon it, " a true bill, *Benjamin Newton*, foreman of grand jury ;" and the record shows that Benjamin Newton was the duly appointed foreman of the grand jury, by which it purports to have been found. It also contains the indorsement, " Filed in open court on the 28th day of May, 1880, *R. Seale*, Cl'k." This

was the term at which the indictment is shown to have been found. The Circuit Court did not err in holding the indictment sufficient.—*Moses v. State*, 35 Ala. 421 ; *Cross r. State*, 63 Ala. 40 ; *Brooks' Case*, 9 Ala. 9.

2. Nor did the court err in refusing to quash the *venire* of the special jury.—*Floyd v. State*, 55 Ala. 61 ; *Hubbard v. State*, 72 Ala. 164 ; *Jackson v. State*, 76 Ala. 26 ; 3 Brick. Dig. 264, § 168.

3. The opinion of the witnesses, based on the appearance of the wound, that the blow was inflicted from the front, and not from the rear, was properly excluded. The wound was susceptible of description ; and it was properly left to the jury to determine from what direction the blow came.—*Walker v. State*, 58 Ala. 393 ; *Bennett v. State*, 52 Ala. 370.

4. The court, charging the jury as to the weight and sufficiency of the evidence to justify a conviction, used this language : "If the jury, after a careful consideration and examination of all the evidence in the case, still have an abiding conviction, to a moral certainty, that the defendant is guilty, this is sufficient to authorize them to find him guilty." There was no error in this charge.- *Coleman v. State*, 59 Ala. 52 ; *Mose v. State*, 36 Ala. 211.

5. Many of the charges asked by defendant, and refused, ignored entirely the duty resting on all, even when in peril, of retreating, or withdrawing from the conflict, if practicable, when the same can be done without increasing the peril, or rendering less available the means of defense.— *Eiland v. State*, 52 Ala. 322 ; *Brown v. State*, 74 Ala. 478 ; *Cross v. State*, 63 Ala. 40 ; *De Arman v. State*, 71 Ala. 351 ; *Wills v. State*, 73 Ala. 362. Charges 4, 8, 9, 10, 11, 17, 22, and 4*d*, were rightly refused, on this principle.— *Tesney v. State*, 77 Ala. 33.

Charge 2*b* is very faulty, as it appears in the transcript. If, instead of the words it employs—" manslaughter in any degree"—it had said *murder in the first degree*, the charge would have been correct. — *Mitchell v. State*, 60 Ala. 26.

Charges 3*c*, 8*h*, 9*i*, are abstract and misleading, and were rightly refused on that account.

6. Charge 13*m* was calculated to mislead. To the average mind it would import that, as matter of law, the jury were bound to give to the testimony of defendant as much weight as they would give to that of any other witness. While it is manifestly true, that the jury should never disregard the testimony of any witness capriciously, the weight and influence oral proof shall have in their deliberations is exclusively for them. The law has neither declared, nor can

[McKee v. The State.]

it declare, any standard for weighing such testimony.—*Ex parte Warwick*, 73 Ala. 57.

7. Charge 21, asked by defendant, is in the following language : "If the jury believe, from the evidence, that the blow was stricken with a stick picked up on the spur of the moment, without previous selection or preparation, then they should not presume that the blow was stricken with malice, from the use of the stick alone." All the testimony agrees, that the stick employed was a hand-spike ; an instrument used in carrying, collecting, and rolling logs for burning. It is not disputed that, from its size, it was an instrument likely to produce death. It will be observed, that this charge was asked as an isolated, independent proposition, without any reference to what may have preceded, or brought it about. "Spur of the moment, without previous selection or preparation," is the category or condition hypothesized. Suppose two strangers were to meet, without previous acquaintance, and, of course, without malice from one to the other, and one of them, finding a hand-spike in his reach, should seize it, and with it slay the other. This would be "without previous selection or preparation." Would there be no presumption of malice from the use of a weapon so deadly ?—*Hadley v. State*, 55 Ala. 31 ; *Ex parte Brown*, 65 Ala. 446. Bear in mind, the charge asked is silent as to any act or word of the deceased, done or spoken, before the blow was struck. If deceased had used insulting language to the accused, no matter how gross, this would not repel the imputation of malice, nor reduce the homicide to manslaughter.—*Judge v. State*, 58 Ala. 406 ; *Grant v. State*, 62 Ala. 233 ; *Nutt v. State*, 63 Ala. 180. Will it be contended, when nothing is said or done, that the homicide is reduced to manslaughter, if done on the "spur of the moment ?" This charge was rightly refused.

8. Charge 25 is erroneous as a legal proposition. Aside from the presumption that every one is held accountable for the natural and probable consequences of his acts intentionally done (*McManus v. State*, 36 Ala. 285), many murders are committed without actual intention to kill. Deaths, even when not thought of, ensuing from an attempt to maim, or from an attempt to commit any other felony, are examples of this kind of murder.

The judgment of the Circuit Court is affirmed.